CRONE v. ANGELL.

---

## Adam Crone v. Charles P. Angell.

*Slander,—actionable words.* To say of another, "he has sworn to a damned lie, and I will put him through for it if it costs me all I am worth," is actionable.

To charge a person with swearing to a lie is not actionable, unless it is coupled with words calculated to convey to the mind of the hearer the idea that the falsehood was of the grade which the law punishes as a crime; but the threat to *put the party through* for it, with a declaration that the threatened action might be attended with expense, is well calculated to convey the idea of his having committed legal perjury.

*Authority of officer to administer oath.* Where the authority of the officer is fully set out, the by-standers must be understood to have been apprised what this authority was, and that it was insufficient in law, if such was the fact.

*Authority of Notary Public. Common Order in Chancery,* The statute (*Comp. L.* § 4338) empowers any Court of record to appoint special commissioners before whom depositions may be taken, but it is very questionable whether a common order, entered by consent of parties, and without the intervention or knowledge of the court, can be regarded as such an appointment.

A Notary Public having general authority to administer oaths and to take affidavits, in any cause pending in any Court of the State, (*Comp. L.* § 460,) depositions sworn to before such officer by stipulation of the parties are evidence in the cause, not by virtue of any authority in the notary to act as commissioner, but by force of the stipulation, and his power to administer oaths under the statute.

*Heard July 7th and* 9th. *Decided July 11th.*

Error to Lenawee Circuit.

This was an action on the case for slander. There were two counts in the declaration, in both of which the words spoken of the plaintiff were alleged to have been that he

"swore to a damned lie, and I will put him through for it, if it costs me all I am worth." In the first count they were alleged to have been spoken of the plaintiff's testimony in a certain cause in the Circuit Court in Chancery, taken before a notary public by virtue of a stipulation of the parties, and a common order entered in the order book of said court.

In the second count there was no such colloquium, but the words were declared upon as actionable in themselves by imputing the crime of perjury. The defendant pleaded to the first count, and demurred to the second. The grounds of demurrer were:—1st. That said count did not set forth any words spoken by the defendant of and concerning the plaintiff, actionable in themselves, and that nothing was alleged to make them actionable; and, 2d, That said count did not allege that the words charged to have been spoken by the defendant were spoken of and concerning any suit or proceeding known to the law, or of and concerning any testimony or evidence given by the plaintiff in any suit or proceeding known to the law, or in any court, or before any person or tribunal authorized to administer an oath, or in any suit or proceeding whatever, nor that the plaintiff had been sworn or affirmed.

The Circuit Court sustained the demurrer; and the cause being tried before a jury on the first count, a verdict was rendered in favor of the defendant, and judgment entered thereupon. The cause was brought into this Court by writ of error and bill of exceptions.

The errors assigned were as follows:

1. That the Circuit Court sustained the demurrer of the defendant to the plaintiff's declaration.

2. That the Circuit Court rejected the testimony offered on the trial to prove that the plaintiff was sworn, and gave testimony before a notary public, to be used in a cause pending in chancery.

3. That the Circuit Judge charged the jury that the plaintiff could not recover without showing that he had been

legally sworn as a witness in the suit referred to, in the words charged in the declaration.

4. That the Circuit Judge charged the jury that Alonzo F. Bixly, as notary public and special commissioner, had no legal authority to administer the oath to the plaintiff, and therefore he was not legally sworn.

The facts appearing on the trial, and the rulings of the court below, so far as the same are necessary for the understanding of the points of law decided, are stated–in the opinion of the Court.

*A. L. Millerd,* for plaintiff in error.

1. The words laid in the declaration impute perjury, and are therefore actionable, *per se.* A colloquium in such a case is not necessary.—8 *Ala.* 510; 3 *Caines,* 73; 8 *Wend.* 573; 3 *Barb.* 625; 12 *Id.* 215; 3 *Hill,* 572; 33 *Vt.* 182.

The words are not the less actionable because, from the circumstances, the crime could not be committed by the party charged with it, unless this fact was known or disclosed to the hearer.—16 *Pick.* 1; 21 *Id.* 51; 19 *Wend.* 296; *Heard on Slander,* § 177.

Nor, because the words referred to a transaction which, in law, did not amount to perjury, unless they were so explained by defendant at the time.—4 *Blackf.* 499; 25 *Me.* 474; 18 *Conn.* 464; 1 *Hilliard on Torts,* 284; *Heard on Slander,* §§ 177, 178, 179; 6 *Humph.* 174; 16 *Wend.* 450.

2. It was not necessary for the plaintiff to entitle him to recover, to show that he was legally sworn as a witness in the suit referred to by the defendant. Whether he was legally sworn, or was sworn at all or not, was immaterial, so far as the right of action was concerned. That he was not, in fact, sworn would be no defense. Whether he was sworn or not, the defendant charged that he was. If he were not so in fact, the statement of the defendant was wholly false, and it is absurd to say that its very falsity is a defense to an action

for making the charge.—3 *Hill*, 572 ; 25 *Wend.* 621 ; 10 *N. H.* 52 ; 33 *Barb. N. Y.* 615 ; 2 *Caines*, 91 ; 12 *Penn. St.* 200.

3. The facts set out in the first count show that the plaintiff was legally sworn as a witness in the suit referred to. A notary public has general authority to administer an oath in any cause pending in any court of the State.—1 *Comp. L.* § 460. And the statute expressly provides that oaths, affidavits and depositions, in any cause or proceeding in any court of record, may also be taken before any commissioner appointed by such court for that purpose. — 2 *Comp. L.* § 4338.

*C. A. Stacy*, for defendant in error.

1. In order to constitute perjury there must be a lawful oath administered in some judicial proceeding.—1 *Binn.* 537–542. Hence, if the words are spoken of, or with reference to a certain trial alleged in the declaration, it is a good defense to show that the plaintiff was not sworn on that trial.—4 *Ind.* 579. But where it is not made to appear by a colloquium that the words had reference to an oath in a judicial proceeding, a mere charge of false swearing, or to say " he has sworn falsely" or "he has sworn to a lie" or "he has taken a false oath,' is not actionable, nor could an innuendo of perjury make it so.— 6 *Tenn.* 690 ; 18 *Penn. St.* 492 ; 1 *Caines*, 347 ; 11 *Wend.* 127 ; 1 *Mich.* 138. But if there be a colloquium referring the discourse to a trial in court, or before an officer authorized to take testimony, and where perjury may be committed, a charge of false swearing is actionable.—14 *Vt.* 462–468 ; 20 *Johns*, 344. And the colloquium becomes a substantive part of the action, and must be proved as laid.—11 *Wend.* 596 ; 2 *Denio*, 208 ; 3 *Barb.* 626 ; 3 *Hill,* 572–574 ; 16 *Wend.* 450–454 ; 21 *Pick.* 51. As to the office of an averment, a colloquium and an innuendo, in a declaration for slander.—5 *Johns.* 211–230.

2. The Constitution provides for the election of Circuit Court Commissioners, and defines and limits their duties.— 1 *Comp. L.* 60 ; 2 *Id.* 1106–1112. By act of 1853, *L.* 1853,

*p.* 125, *Sec.* 1, a notary public is authorized to perform his duties, being an attorney of the Supreme Court. Section 2 provides that before such notary public shall perform any of the duties contemplated by the first section, he shall be satisfied by affidavit or other competent proof that the commissioner is attorney, solicitor or counsel interested, or unable to act or incapable to act; then this section evidently makes the affidavit or proof a condition precedent to any action. This is evident not only from the word "before," but also from the fact that the proofs are required, in all cases, to accompany the acts, and form a part of the proceedings of the officer. But it may be said that his general power as notary public "to administer oaths and take affidavits," 1 *Comp. L.* 215, § 111, gives him the right to administer this oath.

To this we say:

1st. The fact that the Legislature gave the power to a certain class only of notaries to act as Master in Chancery, which includes administering the oath and taking the testimony, precludes this idea. The act of 1853, by limiting this power to a certain class of the notaries, viz: those who are attorneys of the Supreme Court, repeals so much of the law of 1842 as gives the power to other notaries, even if before the law of 1853 they had the power in these cases. It seems evident that a notary could not administer an oath to a witness who was to be examined before a commissioner; and it follows as a matter of course, that he could not administer an oath to one to be examined before, or by, a person having no power to take such examination.

COOLEY J.

We are of opinion that the Circuit Court erred in sustaining the demurrer to the second count of the plaintiff's declaration. The slander alleged consisted in the defendant saying of the plaintiff, he "has sworn to a damned lie, and I will put him through for it, if it costs me all I am worth." The only question is, whether these words fairly, to the common understand-

CRONE v. ANGELL.

ing, impute the crime of perjury. To say that a man has sworn to a lie, is not actionable, because the statement has no reference to a judicial proceeding and conveys no other meaning to the hearer than that the party somewhere, on some occasion, has affirmed a falsehood. But whenever these or any similar words are coupled with others calculated to convey to the mind of the hearer the idea that this assertion of falsehood was in the course of judicial proceedings, and while the party was giving evidence, so that the falsehood was of the grade which the law punishes as a crime, it is well settled, and on sound reason, that the words are actionable in themselves. The words in the present case contain a direct charge of falsehood, with a threat to *put the plaintiff through* for it. The phrase *to put one through* is expressive and forcible, as commonly used, but without any very definite meaning. In one case it may be understood in a sense implying legal prosecution, and in another, that the party threatening proposes himself to inflict some punishment. But to threaten to put one through for false swearing can hardly be understood in any other sense than that the party forsworn has done that for which he is liable to be "put through" at the law. This is the sense, we think, in which the by-standers must have understood the words; and in this sense, therefore, they must be understood by the Court, unless by some accompanying words or explanation a different sense was conveyed at the time they were used. The additional words contained in the count tend strongly to show that this was the defendant's meaning. He would put the plaintiff through *if it cost him all he was worth.* The proceeding was to be or might be attended with expense, but he would still resort to it. We think the whole threat, taken together, was well calculated to convey the idea of intended legal prosecution.

We also think that the Court erred in excluding the evidence offered under the first count. The defendant was charged with having accused the plaintiff of swearing falsely in the giving of testimony in a cause pending in the Circuit Court

in Chancery. The reason alleged for the exclusion was, that the facts alleged in the declaration did not show that the officer administering the oath had authority for that purpose. It is argued for the plaintiff in error that it was wholly immaterial whether he had authority or not, and there is plausibility in this argument. The wrong, when perjury is charged, consists not in the fact that the circumstances were such as to have afforded an opportunity for the crime, but in the wrongful impression conveyed by the words imputing the offense. If the words are designed and calculated to lead the by-standers to believe that the party has been guilty of this heinous offense, the injury is committed, and it does not detract in the least from the injurious consequences, that in point of fact the proceeding which the defendant had in mind was one in which perjury could not have been committed.—*Stone v. Clark*, 21 *Pick*. 51. Otherwise the most atrocious slanders would go unpunished; and if there was nothing whatever to base the charge upon, the exemption from legal responsibility would only be the more complete and certain.

But in this case the colloquium is averred of evidence given before an officer acting under an authority which is fully set out; and we must understand the by-standers to have been apprised what this authority was, and that it was insufficient in law, if such was the fact. And we are therefore to see whether the authority set out was sufficient.

It appears by the declaration that the parties to a suit in Chancery had stipulated that the evidence therein might be taken before a notary public named, and had entered a common order based upon this stipulation, that such notary public act as special commissioner for the purpose. The statute (*Com. L.* § 4338,) empowers any Court of Record to appoint special commissioners before whom depositions may be taken; but it is very questionable whether a common order, entered by consent of parties, and without the intervention or knowledge of the court, can be regarded as such an appointment. The statute (*Comp. L.* §§ 3995–7,) also provides that a

CRONE v. ANGELL.

notary public, being also an attorney of the Supreme Court, may perform the duties of Circuit Court Commissioner when that officer is disqualified, but the declaration does not aver facts bringing the case within these provisions. A notary public, however, has general authority to administer oaths, and to take affidavits in any cause pending in any court of the state, (*Comp. L.* § 460,) and we think this authority extends to all oaths which may properly be taken out of court to be made use of in court. We do not know of anything to which it can be more properly applied than the verification of the statements of witnesses which the parties have stipulated may be sworn to before the notary; for the purpose of being used as evidence. They are evidence in the case, not by virtue of any authority in the notary to act as commissioner, but by force of the stipulation; and the authority to administer the oath in verification is within the words, and we think within the spirit of the general statute prescribing his powers. They stand on the same footing as affidavits which the parties have agreed may be used in evidence, and it can certainly make no difference with the validity of the oath, that the statements of the witness are written down by the officer in the form of question and answer, instead of the more usual form in which affidavits appear. In either case the statement is signed by the witness and its truth affirmed by him; and the whole proceeding, being for a proper and lawful purpose, to be made use of in a pending cause, we think the notary may lawfully take and certify the oath.

The judgment of the Circuit Court should be reversed, with costs, and a new trial ordered.

CHRISTIANCY J. and MARTIN CH. J. concurred.

CAMPBELL J.

I concur in holding the second count sufficient, because, while I think the language charged capable of two constructions, it was made certain by a proper averment. I concur fully upon the other points.